No. 13-1569

IN THE

# United States Court of Appeals
# for the Fourth Circuit

GLADYS HILL and CYNTHIA MITCHELL,

*Plaintiffs–Appellants*,

v.

HAMPSTEAD LESTER MORTON COURT PARTNERS, L.P., et al.,

*Defendants–Appellees*.

On Appeal from the United States District Court
for the District of Maryland

(Catherine C. Blake, United States District Judge)

**BRIEF OF APPELLEES**

M. Natalie McSherry
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
(410) 752-6030
(410) 539-1269 (facsimile)
Email: nmcsherry@kg-law.com

*Counsel for Appellees*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS – HAMPSTEAD LESTER MORTON COURT PARTNERS, L.P.

Pursuant to FRAP 26.1 and Local Rule 26.1, Hampstead Lester Morton Court Partners, L.P., an appellee, makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    **No.**

2.  Does party/amicus have any parent corporations?
    **Yes.**

    If yes, identify all parent corporations, including grandparent and great-grandparent corporations: **Hampstead Lester Morton Court, LLC is the 1% managing and sole general partner of Hampstead Lester Morton Court Partners, L.P.  Hampstead Lester Morton Court, LLC is a party to this case.**

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
    **No.**

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
    **No.**

5.  Is party a trade association?
    **No.**

6.  Does this case arise out of a bankruptcy proceeding?
    **No.**

 /s/ *M. Natalie McSherry*
Counsel for Appellees

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS – HAMPSTEAD LESTER MORTON COURT, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1, Hampstead Lester Morton Court, LLC, an appellee, makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    **No.**

2.  Does party/amicus have any parent corporations?
    **Yes.**

    If yes, identify all parent corporations, including grandparent and great-grandparent corporations: **Hampstead Partners, Inc., is the 63% managing member and guarantor of Hampstead Lester Morton Court, LLC. Hampstead Partners, Inc., is a party to this case.**

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
    **No.**

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
    **No.**

5.  Is party a trade association?
    **No.**

6.  Does this case arise out of a bankruptcy proceeding?
    **No.**

_/s/ M. Natalie McSherry_
Counsel for Appellees

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS – HAMPSTEAD PARTNERS, INC.

Pursuant to FRAP 26.1 and Local Rule 26.1, Hampstead Partners, Inc., an appellee, makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity?
   **No.**

2. Does party/amicus have any parent corporations?
   **No.**

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
   **No.**

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
   **No.**

5. Is party a trade association?
   **No.**

6. Does this case arise out of a bankruptcy proceeding?
   **No.**

   _/s/ M. Natalie McSherry_____
   Counsel for Appellees

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS – EMP II, INC. d/b/a ALPHA PROPERTY MANAGEMENT

Pursuant to FRAP 26.1 and Local Rule 26.1, EMP II, Inc. d/b/a Alpha Property Management, an appellee, makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity? **No.**

2. Does party/amicus have any parent corporations? **No.**

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? **No.**

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? **No.**

5. Is party a trade association? **No.**

6. Does this case arise out of a bankruptcy proceeding? **No.**

 /s/ M. Natalie McSherry
Counsel for Appellees

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... vii

JURISDICTIONAL STATEMENT AND STATEMENT OF THE CASE .............1

ISSUES PRESENTED FOR REVIEW ...................................................1

STATEMENT OF FACTS .................................................................1

SUMMARY OF ARGUMENTS ...........................................................7

STANDARD OF REVIEW ................................................................8

ARGUMENT ..............................................................................9

    I.    THE DISTRICT COURT WAS CORRECT IN RULING THAT APPELLANTS' CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS ......................................................................9

        A.   The Rehabilitation Act .........................................................9

        B.   The Statute of Limitations...................................................10

        C.   Appellants' Rehabilitation Claim is Time-Barred Because it Accrued More Than Three Years Before Appellants Filed Suit .......................11

    II.   THE DISTRICT COURT WAS CORRECT IN RULING THAT THE DENIAL OF MRS. HILL'S RENEWED REQUEST FOR THE SAME ACCOMMODATION IN 2010 DID NOT TRIGGER A NEW LIMITATIONS PERIOD ......................................................13

        A.   The Denial of Mrs. Hill's Renewed Request in 2010 Was Not a Discrete Discriminatory Act...............................................13

        B.   Appellants' Change-in-Circumstances Argument Is Legally and Factually Unsupported .....................................................20

III. THE DISTRICT COURT WAS CORRECT IN RULING THAT THE CONTINUING VIOLATION DOCTRINE CANNOT REVIVE APPELLANTS' UNTIMELY CLAIMS.......................................................23

    A.   Appellees Did Not Engage in a Pattern or Practice of Discrimination .......................................................................25

    B.   Appellees' Denial of Mrs. Hill's 2010 Request Was a Continuing Ill Effect of the 2006 Denial ..................................................27

CONCLUSION .........................................................................30

STATEMENT RESPECTING ORAL ARGUMENT ...........................................31

CERTIFICATE OF COMPLIANCE .......................................................32

CERTIFICATE OF SERVICE .............................................................33

## TABLE OF AUTHORITIES

<u>Cases</u>

*A Soc'y Without A Name v. Va.*,
  655 F.3d 342 (4th Cir. 2011) ....................................................................... 10, 24

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................8, 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...........................................................................................8

*Cherosky v. Henderson*,
  330 F.3d 1243 (9th Cir. 2003) ..................................................................... 25, 26

*Chisolm v. TranSouth Fin. Corp.*,
  95 F.3d 331 (4th Cir. 1991) ................................................................................8

*Cox v. Stanton*,
  529 F.2d 47, (4th Cir. 1975) .............................................................................10

*Del. State Coll. v. Ricks*,
  449 U.S. 250 (1980) .................................................................................... 13, 28

*Durham v. Atl. City Elec. Co.*,
  No. 08-1120, 2010 WL 3906673 (D. N.J. Sept. 28, 2010) .................................16

*Elmenayer v. ABF Freight Sys.*,
  318 F.3d 130 (2d Cir. 2003) .............................................................................16

*Evans v. Technologies Applications & Serv. Co.*,
  80 F.3d 954 (4th Cir. 1996) ................................................................................8

*Hall v. The Scotts Co.*,
  211 Fed. Appx. 361 (6th Cir. 2006) .............................................................. 16, 28

*Hall v. The Scotts Co.*,
  No. 2:05-CV-732, 2005 WL 3499933 (S.D. Ohio Dec. 21, 2005) .............. 28, 29

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977) ....................................................................................26

*Jersey Heights Neighborhood Ass'n v. Glendening*,
   174 F.3d 180 (4th Cir. 1999)................................................. 14, 19, 28

*Ledbetter v. Goodyear Tire & Rubber Co.*,
   550 U.S. 618 (2007) ....................................................................................10

*Lendo v. Garrett Cnty. Bd. of Ed.*,
   820 F.2d 1365 (4th Cir. 1987).................................................... 17, 18

*Malhotra v. Cotter and Co.*,
   885 F.2d 1305 (7th Cir. 1989)...............................................................23

*Martin v. Frank*,
   788 F. Supp. 821 (D. Del. 1992) ..........................................................24

*Martin v. Sw. Va. Gas Co.*,
   135 F.3d 307 (4th Cir. 1998)..................................................................14

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ................................................................... 24, 26

*Nat'l Adver. Co. v. City of Raleigh*,
   947 F.2d 1158 (4th Cir. 1991)...............................................................25

*Palochak v. Cnty. of Beaver*,
   No. 04-421, 2006 WL 544290 (W.D. Pa. Mar. 6, 2006) ....................................16

*Schalk v. Associated Anesthesiology Practice*,
   316 F. Supp. 2d 244 (D. Md. 2004) ....................................................10

*Shaw v. Stroud,*
   13 F.3d 791 (4th Cir. 1994)......................................................................8

*West v. ITT Cont'l Baking Co.*,
   683 F.2d 845 (4th Cir. 1982)..................................................................25

*Williams v. Giant Food Inc.*,
    370 F.3d 423 (4th Cir. 2004)................................................................26

*Zdziech v. DaimerChrysler Corp.*,
    114 Fed. Appx. 469 (3d Cir. 2004) ...................................... 15, 16, 28

## Statutes and Rules

Fed. R. Civ. P. 56...............................................................................8

29 U.S.C. § 794...................................................................................9

24 C.F.R. § 8.24..............................................................................9, 10

## JURISDICTIONAL STATEMENT AND STATEMENT OF THE CASE

Appellees Hampstead Lester Morton Court Partners, L.P., Hampstead Lester Morton Court, LLC, Hampstead Partners, Inc., EMP II, Inc. d/b/a Alpha Property Management ("Alpha") concur with the jurisdictional statement and the statement of the case set forth in appellants' brief.

## ISSUES PRESENTED FOR REVIEW

1.     Did the District Court properly grant summary judgment on the ground that appellants' Rehabilitation Act claim is barred by the statute of limitations because it accrued more than three years before appellants filed suit?

2.     Did the District Court properly conclude that the denial of a repeated request for accommodation, four years after the initial denial, was not a fresh act of discrimination, so as to trigger a new statute of limitations period?

3.     Did the District Court properly conclude that the continuing violation doctrine is inapplicable to a continued refusal to provide a requested accommodation?

## STATEMENT OF FACTS[1]

Mrs. Hill has rented the same four-bedroom townhouse at the Hampstead Lester Morton Court ("Lester Morton Court") housing community since 1974.  *J.A.*

---

[1] Facts alleged in the amended complaint, and testified to at the hearing on the motion, are treated as true solely for the purposes of this appeal.

*3.*  Mrs. Hill currently lives with her adult son, Alonzo Mitchell, and adult daughter, appellant Cynthia Mitchell. *J.A. 12*.

Lester Morton Court is owned by appellee Hampstead Lester Morton Court Partners, L.P., of which appellee Hampstead Lester Morton Court, LLC is the sole general partner. *J.A. 12, 54-55*. Appellee Hampstead Partners, Inc. is the guarantor of Hampstead Lester Morton Court, LLC. *Id.* Appellee Alpha serves as the property manager of Lester Morton Court.[2] *Id.*

In 2004, Mrs. Hill had her left leg amputated below the knee and began using a wheelchair for mobility. *J.A. 44*. Since the time of the amputation, Mrs. Hill has been sleeping on the first-floor of her two-story townhouse. *J.A. 45*, *91*. There is one step immediately outside the front door of the townhouse and another step that leads to the public sidewalk. *J.A. 15*. Appellants allege that Mrs. Hill is incapable of navigating the steps on her own and must rely on her son or daughter to maneuver the wheelchair over the steps. *Id.*

In June 2004, Mrs. Hill's doctor notified Lester Morton Court that Mrs. Hill's leg had been amputated and that she would "need a ramp to access her apartment." *J.A. 1*, *16*. By letter dated December 14, 2004, the community manager at Lester Morton Court told Mrs. Hill that Alpha would "make preparations to install the

---

[2] Appellees have denied and continue to deny that Hampstead Lester Morton Court, LLC, Hampstead Partners, Inc., and Alpha are proper parties in this action. None of those entities receive federal financial assistance and, therefore, none are subject to section 504 of the Rehabilitation Act.

handicap ramp" during a renovation project scheduled to occur in 2005. *J.A. 2*. Appellants allege that, in January 2005, Mrs. Hill renewed her request for a wheelchair ramp or transfer to a three- or four-bedroom wheelchair-accessible apartment. *J.A. 16*. In a letter to Mrs. Hill, dated March 31, 2005, Lester Morton Court's community manager explained that the housing community was "undergoing a rehabilitation construction project" and that "certain units" would be renovated to bring them into compliance with section 504 of the Rehabilitation Act. *J.A. 5*. The letter stated that, "[u]pon completion of the project you would *have the opportunity to request* a transfer to one of these units to accommodate your needs." *Id.* (emphasis added).

The renovation project was completed in October 2005. *J.A. 3*, *16*. Appellants allege that Lester Morton Court's failure to offer Mrs. Hill a transfer to a three- or four-bedroom apartment at that time is evidence of appellees' refusal to accommodate her disability. *J.A. 12*, *118*. Yet, it is undisputed that there were not then, nor are there now, any three- or four-bedroom wheelchair-accessible apartments at Lester Morton Court. *J.A. 92-93*, *106*. Moreover, Mrs. Hill testified that she knew in 2005 that Lester Morton Court was not constructing any three- or four-bedroom wheelchair-accessible apartments during its renovation. *J.A. 107*.

Appellants also allege that appellees' refusal to accommodate Mrs. Hill's disability is demonstrated by appellees' failure to offer Mrs. Hill a transfer to a

three- or four-bedroom apartment at Poppleton Place Apartments ("Poppleton Place") or Hampstead Clay Court Apartments ("Clay Court"), two other housing communities managed by Alpha.[3]  *J.A. 8*, *17*, *44-45*.  But there are no three- or four-bedroom wheelchair-accessible apartments at the other Alpha-managed properties, *J.A. 107*, and Mrs. Hill testified that she was unwilling to transfer to a two-bedroom wheelchair-accessible apartment.  *J.A. 92-93*.  Furthermore, Mrs. Hill knew when she made the transfer requests that neither Poppleton Place nor Clay Court had any suitable apartments.  *J.A. 93-94, 102-03*.  Even if Mrs. Hill was willing to live in a two-bedroom apartment, Alpha could not legally transfer her to a different unit (at Lester Morton Court or another housing community), because Mrs. Hill never applied for a transfer in accordance the U.S. Department of Housing and Urban Development's ("HUD") mandatory procedures.  *J.A. 91-93, 107*.

Mrs. Hill renewed her request for structural modifications to her unit during a July 18, 2006, meeting with Lester Morton Court's community manager and Alpha.  *J.A. 17*.  During the meeting, appellees unequivocally denied her request for structural modifications, stating, according to appellants, "that they had no obligation to provide a reasonable accommodation under Section 504 of the Rehabilitation Act of 1973 because they had created one and two bedroom

---

[3] Neither Poppleton Place nor Clay Court is owned by any of the appellees.  *J.A. 55*.

accessible units on the premises." *Id.  See also J.A. 95*.  Appellees also denied the request on the ground that "it would be too expensive to provide a wheelchair ramp for Mrs. Hill, and that they would not do so because if they did, other tenants might request one as well." *Id.*

During another meeting with Lester Morton Court's community manager in April 2008, Mrs. Hill repeated this same request for structural modifications to her townhouse or a transfer to a three- or four-bedroom apartment.  *Id.*  The community manager gave Mrs. Hill an application for Poppleton Place.  *J.A. 18*, *77-78*.  On August 18, 2008, Mrs. Hill filled out an application for a three-bedroom wheelchair-accessible apartment at Poppleton Place and returned it to Lester Morton Court's community manager.[4]  *J.A. 47-53*.  Not only did Mrs. Hill not submit an application to Poppleton Place, as required, she knew when she completed the application that Poppleton Place had no three-bedroom wheelchair-accessible units.  *J.A. 102-103*.

On September 30, 2010, appellants' counsel sent a letter to Alpha and Lester Morton Court again renewing Mrs. Hill's request for structural modifications.  *J.A. 6-8*, *18*.  On November 1, 2010, appellees, through counsel, responded by e-mail to

---

[4] Mrs. Hill did not submit the application to Poppleton Place's management office, as required by HUD's regulations implementing section 504.  *J.A. 107-08*; *S.A. 1-2*. (References to "S.A." are to the Supplemental Appendix filed by appellees.  The materials in the Supplemental Appendix were designated for inclusion but apparently unintentionally omitted from the parties' Joint Appendix.)

appellants' counsel, re-stating their response since 2006: that the requested modifications were not required by law and, furthermore, would impose an undue financial burden on Lester Morton Court.  *J.A. 9.*

Appellants filed their original complaint in this matter on February 21, 2012. They subsequently filed an amended complaint on April 12, 2012.  The amended complaint contains claims against all appellees for violations of section 504 of the Rehabilitation Act (Count I) and negligence (Count II).  *J.A. 20-22.*  Appellants sought declaratory relief, damages, and a permanent injunction compelling appellees to accommodate Mrs. Hill's disability.[5] *J.A. 22-23.*

While this suit was pending, appellees voluntarily made certain modifications to the interior of Mrs. Hill's townhouse, including the widening of the first-floor powder room entryway, the installation of a toilet in the powder room specially-designed for use by handicap persons, the installation of grab bars next to the toilet, and the installation of a lever-type handle on the powder room door.  *J.A. 117.*  The modifications enable Mrs. Hill to use that bathroom without assistance.  *Id.*

Appellees moved for summary judgment on all of the claims against them. On March 28, 2013, the District Court granted appellees' motion for summary

---

[5] Appellants also sought a preliminary injunction.  Following a motion hearing, the District Court denied the request for a preliminary injunction on June 14, 2012.

judgment and entered judgment in favor of appellees.[6]   Because the record discloses no genuine issues of material fact and because appellees are entitled to judgment as a matter of law, this Court should affirm.

## SUMMARY OF ARGUMENTS

The three-year statute of limitations applicable to claims under the Rehabilitation Act begins to run when the claimant knows or has reason to know of his or her injury.  It is beyond any reasonable dispute that appellants' cause of action accrued no later than July 2006, when appellants knew that appellees had refused to provide the requested accommodations.  As a consequence, the limitations period expired in July 2009 – over two and half years before appellants filed their complaint.  In these circumstances, appellants' Rehabilitation Act claim is barred by limitations.

Appellees' 2010 reiteration of their 2006 decision to deny appellants' request for structural modifications was not a discrete act of discrimination, so as to trigger a new limitations period.  To adopt appellants' version of the change-in-circumstances theory would render the statute of limitations meaningless in the context of a claim of refusal to accommodate.  No claim would ever be time-barred, as a simple repeated inquiry would start a new statute of limitations.

---

[6] Because appellants have not challenged the District Court's grant of summary in favor of appellees on the Maryland law negligence claim, that ruling is not before this Court.

Appellants also cannot avoid the statute of limitations bar by invoking the continuing violation doctrine. Unlike "pattern or practice" offenses such as racial steering and hostile work environment, the present case involved a single act of alleged discrimination: the clear and unequivocal denial of appellants' request for accommodation, which occurred in 2006. Accordingly, this Court should affirm.

## STANDARD OF REVIEW

The standard of review when determining whether a district court erred in granting summary judgment is *de novo. Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994); *Chisolm v. TranSouth Fin. Corp.,* 95 F.3d 331, 334 (4th Cir. 1991). Summary judgment is properly granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *De novo* review requires consideration of all the pleadings and allegations in the light most favorable to the non-moving party, in deciding whether there is a genuine issue of material fact. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). *See also* Fed. R. Civ. P. 56(c). If the Court finds the evidence insufficient

to support a reasonable jury verdict in favor of the non-moving party, the district court's grant of summary judgment must be affirmed. *Anderson,* 477 U.S. at 251-52.

## ARGUMENT

## I. THE DISTRICT COURT WAS CORRECT IN RULING THAT APPELLANTS' CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

### A. The Rehabilitation Act

Section 504 protects certain disabled persons from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subject to discrimination under any program or activity receiving Federal Financial assistance." 29 U.S.C. § 794(a). The statute does not "necessarily require a recipient [of federal financial assistance] to make each of its existing facilities accessible to and usable by individuals with handicaps." 24 C.F.R. § 8.24(a)(1). Rather, the statute requires that the federally-subsidized housing program, "when viewed in its entirety, [be] readily accessible to and usable by individuals with handicaps." *Id.* § 8.24(a). Recipients of federal aid may comply with the requirements of the Rehabilitation Act "through such means as reassignment of services to accessible buildings, assignment of aides to beneficiaries, . . . alteration of existing facilities and construction of new facilities." *Id.* § 8.24(b). A recipient

of financial aid does not, however, have to "take any action that it can demonstrate would result in undue financial . . . burdens." *Id.* § 8.24(a)(2).

### B.    <u>The Statute of Limitations</u>

Although a private cause of action is available for alleged violations, the Rehabilitation Act does not contain a specific limitations period.  Here, the District Court determined that Maryland's three-year limitations period for civil actions should apply to appellants' Rehabilitation Act claim, and the parties do not dispute that determination.  *See J.A. 121-22* (citing *Schalk v. Associated Anesthesiology Practice*, 316 F. Supp. 2d 244, 251 (D. Md. 2004)).

The statute of limitations on a Rehabilitation Act claim begins to run "when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'"  *A Soc'y Without A Name v. Va.*, 655 F.3d 342, 348 (4th Cir. 2011) (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)).  In a case involving the timeliness of a civil rights claim, the Supreme Court "stressed the need to identify with care the specific [discriminatory] practice that is at issue."  *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 624 (2007).  As the District Court correctly observed, the alleged violation in this case is not the existence of steps outside Mrs. Hill's townhouse; it is appellants' refusal to make the requested structural modifications or transfer her to a three-bedroom wheelchair-accessible apartment.  *See J.A. 122*.

**C.    Appellants' Rehabilitation Claim is Time-Barred Because it Accrued More Than Three Years Before Appellants Filed Suit**

Appellants' claim under the Rehabilitation Act is time-barred because they knew or had reason to know before February 21, 2009 – three years before filing this suit – that appellees had refused to make the requested accommodations. Indeed, the record is replete with uncontroverted evidence that appellants knew by 2006 that Mrs. Hill's request for accommodations had been denied.

Mrs. Hill testified that she knew in 2005 that Lester Morton Court did not have any three-bedroom wheelchair-accessible apartments and that it was not constructing any such apartments during its renovation. *J.A. 92-93*. Mrs. Hill further testified that she knew in 2006 that the other properties managed by Alpha only had one- and two-bedroom wheelchair-accessible units. *J.A. 93-94*. Appellants, therefore, knew in 2006 that Mrs. Hill's transfer request could not be accommodated.

Although Mrs. Hill completed an application for a three-bedroom wheelchair-accessible apartment at Poppleton Place, *J.A. 98-99, 102*, she testified that she knew Poppleton Place had no three-bedroom wheelchair-accessible apartments, *J.A. 102-03*, and she was unwilling to transfer to a two-bedroom apartment, *J.A. 92, 99*. Accordingly, she made no effort to follow up with anyone at Poppleton Place regarding her application. *J.A. 102-03*. Furthermore, neither Mrs. Hill nor anyone on her behalf (including Ms. Mitchell) visited other housing

communities to search for suitable housing.  *J.A. 93-94, 102.*  Mrs. Hill testified that she "liked living at Lest Morton [Court]" and did not want to move out of her townhouse.  *J.A. 79, 94.*  In view of this testimony, it is beyond any reasonable dispute that appellants knew no later than 2006 that appellees could not – and, therefore, would not – transfer Mrs. Hill to a three- or four-bedroom wheelchair accessible apartment.

Appellants also knew by 2006, at the latest, that appellees had refused to make the requested structural modifications to appellants' townhouse.  In her March 2005 letter to Mrs. Hill, the community manager stated that, upon completion of Lester Morton Court's renovation project, appellees "would have the opportunity to request a transfer to one of [the retrofitted, wheelchair-accessible] units to accommodate your needs."  *J.A. 5.*  The letter made no mention of a wheelchair ramp, and appellees did not install a wheelchair ramp or make any other modifications to appellants' townhouse during the renovation.  *J.A. 16.*  Most significantly, when Mrs. Hill restated her request for a wheelchair ramp during the July 18, 2006 meeting, appellees clearly and unequivocally denied the request.  *J.A. 17, 95.*  Thus, appellants' own pleadings and testimony demonstrate, beyond any reasonable dispute, that they knew no later than 2006 that appellees had refused to make the requested structural modifications.

In these circumstances, drawing all reasonable inferences in appellants' favor, appellants' Rehabilitation Act claim accrued in 2006. Because appellants did not file their complaint within three years of the accrual date, their claim is time-barred.

## II.    THE DISTRICT COURT WAS CORRECT IN RULING THAT THE DENIAL OF MRS. HILL'S RENEWED REQUEST FOR THE SAME ACCOMMODATION IN 2010 DID NOT TRIGGER A NEW LIMITATIONS PERIOD

Mrs. Hill's action accrued no later than 2006. *Supra* § I.C. The fact that she renewed her request in 2010 and that appellees continued to deny it did not give rise to a separate cause of action with a new statute of limitations. Nor was appellees' denial of that renewed request part of an ongoing practice of discrimination that would toll limitations. *Infra* § III. There is no dispute as to any material fact relating to Mrs. Hill's renewed requests or appellees' denials, and therefore no issue of material fact for trial with regard to the issue of limitations.

### A.    The Denial of Mrs. Hill's Renewed Request in 2010 Was Not a Discrete Discriminatory Act

It is well-settled that a plaintiff cannot trigger a new statute of limitations period by making an identical request for an accommodation that was previously denied. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980) ("Mere requests to reconsider" decisions already made "cannot extend the limitations period applicable to the civil rights laws"); *Martin v. Sw. Va. Gas Co.*, 135 F.3d

307, 310 (4th Cir. 1998) ("An [individual's] refusal to undo a discriminatory decision is not a fresh act of discrimination" (internal citation and quotations omitted)).  As this Court explained in *Jersey Heights Neighborhood Association v. Glendening*, 174 F.3d 180, 189 (4th Cir. 1999), "every refusal to reconsider [the decision to deny accommodations] does not revive the limitations period for the original . . . decision."  "To do so would upset the balance struck by the limitations period between the reasonable needs of individuals claimants and the public interest in finality." *Id.*

As discussed in greater detail above, appellants knew in 2006 that appellees had refused to accommodate Mrs. Hill's request for structural modifications to her townhouse.  *Supra* § I.B.  At the meeting in July 2006, appellees unequivocally rejected Mrs. Hill's request on the ground that they had no legal duty under the Rehabilitation Act to make the modifications.  *J.A. 17*.  Mrs. Hill renewed her request in 2007 and 2008, and appellees steadfastly continued to deny the request. *J.A. 95*.

In September 2010, appellants' counsel sent a letter to Alpha and Lester Morton Court's community manager again renewing Mrs. Hill's request for structural modifications.  *J.A. 6-8, 18*.  The letter specifically referenced Mrs. Hill's prior request for structural modifications and appellees' denial of that request.  *See*

*J.A. 6-8.* Appellees' response, through counsel, reiterated the 2006 denial. *See J.A. 9.*

On this record, the undisputed evidence is that Mrs. Hill's 2010 renewed request sought the exact same accommodation – structural modifications to appellants' townhouse – that was previously requested and expressly denied in 2006. In other words, the 2010 request amounted to nothing more than an attempt to obtain reconsideration of the previous denial.

This case is analogous to *Zdziech v. DaimerChrysler Corp.*, 114 Fed. Appx. 469 (3d Cir. 2004), in which the Third Circuit addressed the "renewed request" issue. In *Zdziech*, the plaintiff, who had been placed on disability, had improved to the point that he could resume working in his previous position with a reasonable accommodation. *Id.* at 470. The defendant, however, refused to accommodate him. *Id.* For a year and a half, the plaintiff made multiple requests for the same accommodation, which the defendant either ignored or explicitly rejected. *Id.* Several days after his most recent request, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.*

The Third Circuit rejected the argument that the defendant's denial of each request for reinstatement and accommodation constituted a discrete act of discrimination:

> The failure to act upon receipt of a letter requesting reinstatement is not a discrete act of discrimination and does not restart the statute of limitations. [The plaintiff's] complaint, and the subsequent letters, stem from [the initial act of] placing him on disability leave . . . . To permit a person to reset the statutory requirements for the timely filing of a complaint merely by writing a new letter to his former employer would vitiate the intent behind the 300-day time limit.

*Id.* at 472.

Other courts have similarly held that neither a request for reconsideration – and this includes repeating a request previously denied – nor a denial of such request constitutes a new act of discrimination that triggers a new statute of limitations. *See, e.g., Hall v. The Scotts Co.*, 211 Fed. Appx. 361, 363 (6th Cir. 2006) (holding that defendant's reiteration of its earlier denial of plaintiff's request for accommodation did not constitute a new act of discrimination that triggered a new charge-filing period); *Elmenayer v. ABF Freight Sys.*, 318 F.3d 130, 135 (2d Cir. 2003) (explaining that "[t]he rejection of a proposed accommodation is a single completed action when taken"); *Durham v. Atl. City Elec. Co.*, No. 08-1120, 2010 WL 3906673, at *7 (D. N.J. Sept. 28, 2010) ("Plaintiff's persistence in claiming that [defendant should provide him with an accommodation] amounts to nothing more than a request that [defendant] reconsider its [original] determination."); *Palochak v. Cnty. of Beaver*, No. 04-421, 2006 WL 544290, *4 (W.D. Pa. Mar. 6, 2006) (concluding that defendant's repeated denials of plaintiff's

request to be reinstated did not amount to separate unlawful employment acts so as to start a new limitations period).  Accordingly, in this case, the denial of Mrs. Hill's renewed request for structural modifications in 2010 was not a discrete discriminatory act, independent of the prior denials, as argued by appellants.  *See* Opening Brief of Appellants ("Br.") at 15.

This case is distinguishable from the scenario presented in *Lendo v. Garrett County Board of Education*, 820 F.2d 1365 (4th Cir. 1987), relied upon by appellants.  *See* Br. at 17-18.  In brief summary, the *Lendo* Court held that a teacher's denial of tenure was not an "effect" of two previous negative evaluations, but rather was a "separate allegedly retaliatory act," because the teacher "could not have known with any certainty [at the time of the evaluations] that he would eventually be denied tenure."  820 F.2d at 1367.

In the present case, appellants' claim, and their renewed requests, stem from a single occurrence: the explicit denial of Mrs. Hill's request for accommodation in 2006.  This is not a case where a separate event such as the denial of tenure occurred, which was not known in 2006.  Appellants' request for accommodation had already been denied in 2006.  Therefore, unlike the plaintiff in *Lendo*, appellants knew or had reason to know in 2006 that their request for structural modifications had been refused and would not be granted.  *Supra* § I.C.

Furthermore, *Lendo* involved two obviously distinct, albeit related, acts: the negative evaluations and the subsequent denial of tenure. 820 F.2d at 1367. In stark contrast, here, it is undisputed that Mrs. Hill made the *same* request for structural modifications in 2006 and 2010, and the result was the same each time: appellees unequivocally denied her request. Mrs. Hill's 2010 request was simply an attempt to renew her earlier request. Appellees' continued denial was, at most, merely a consequence of their original decision that they had no legal duty to make the structural modifications, and not, as appellants contend (Br. at 18), a "separate and distinct act."

Appellants, nonetheless, try to differentiate their 2010 request based on the fact that it was made four years after the 2006 request; that there was a different community manager at Lester Morton Court in 2010; that appellees' counsel's 2010 e-mail did not refer specifically to the 2006 request and denial; and that the 2010 e-mail stated in present-tense that requested modifications "would result in an undue financial burden because [Lester Morton Court] is cash-strapped." Br. at 18. The argument misses the point. None of these facts changes the undisputed fact that Mrs. Hill asked for the *same accommodation* in 2006 and 2010. The law is clear that a plaintiff cannot trigger a new limitations period by reiterating an identical request that was previously denied.

An equitable balance between the reasonable needs of individual claimants and the policies behind the statute of limitations requires that there be some point in time or circumstances when a private cause of action under the Rehabilitation Act can no longer be pursued.  In this case, allowing appellants to pursue their claim, despite the fact that they knew in 2006 that appellees would not make the requested structural modifications, would contravene the policies underlying the statute of limitations, including protection of defendants against stale claims; would eviscerate the limitations defense in similar Rehabilitation Act cases; and would open up recipients of federal financial assistance to unlimited exposure to liability.  *See Glendening*, 174 F.3d at 189 (discussing policies underlying the statute of limitations).  Appellants have offered no persuasive answer to these objections.

In these circumstances, the District Court correctly ruled that the 2010 denial was not a new, discrete act of alleged discrimination with a new date of accrual for limitations purposes.  Appellants' Rehabilitation Act claim accrued no later than the July 2006 meeting, when appellees clearly denied Mrs. Hill's requested accommodation, and the statute of limitations for any claim based on such a denial began to run from that date.

### B.     Appellants' Change-in-Circumstances Argument Is Legally and Factually Unsupported

Appellants contend, without citing any legal authority, that as long as a defendant's original denial of an accommodation is not based on a "permanent condition," the possibility that the defendant's circumstances "may" change should render a subsequent denial of the same requested accommodation an independent act of discrimination. *See* Br. at 21-22.  Under such an approach, a plaintiff could always initiate a fresh limitations period by renewing a previously-denied request for accommodations on the ground that the defendant's financial position *may* have changed.[7]  *See* Br. at 21-22.  Appellants' theory has not been recognized in this Circuit, ignores the well-established case law elsewhere on the issue of "renewed requests" for accommodations, and would, as a practical matter, destroy the policies of finality and repose underlying the statute of limitations in Rehabilitation Act cases.

Even if this Court were to accept appellants' change-in-circumstances theory – which it should not – the undisputed facts fail to show any such change in appellees' circumstances following the 2006 denial that would, as appellants argue, render the 2010 denial an independent act of discrimination.  *See* Br. at 19-20.

---

[7]   As explained below, appellants' conclusory assertion that appellees' circumstances changed between 2006 and 2010 is wholly unsupported by the record evidence.

Appellants' own allegations establish that appellees denied Mrs. Hill's request for accommodations on the ground that they had no legal duty to accommodate Mrs. Hill's disability. *See J.A. 17-18.* Appellees reasoned that, because Lester Morton Court had one- and two-bedroom accessible units, it was, viewed in its entirety, readily accessible to individuals with handicaps, and therefore met the requirements of section 504. *Compare J.A. 17* (alleging that, in July 2006, appellees expressly denied any legal duty to make the requested structural modifications "because they had created one and two bedroom accessible units [at Lester Morton Court]"), *and J.A. 18* (alleging that, in November 2010, appellees stated they "had no legal obligation to make or pay for [the requested] modifications"), *with J.A. 9* (appellees' counsel's November 2010 e-mail explaining that appellees had no legal duty to make the structural modifications to appellants' townhouse, because "Lester Morton Court Apartments is, in its entirety, readily accessible to persons with handicaps, and therefore meets the standard of the [Rehabilitation Act]").

Appellants have not claimed that any factual or legal change in circumstances arose between 2006 and 2010 that would cause appellees to reevaluate their determination that Lester Morton Court was readily accessible, and

thus complied with the Rehabilitation Act.[8]  Nor is there any evidence in the record to suggest that such a change in appellees' circumstances existed.

Instead, appellants focus only on appellees' additional basis for denying Mrs. Hill's requests – namely, that the structural modifications would impose an undue financial burden.  *See J.A. 17* (alleging that appellees also denied the 2006 request because "it would be too expensive to provide a wheelchair ramp for Mrs. Hill"), *and J.A. 18* (alleging that, in November 2010, appellees again stated "it would be too expensive to make the requested modifications and that in any case").  Appellants attempt to generate a genuine dispute of material fact by contending that "financial statements provided by [Lester Morton Court] and Alpha suggest that their financial circumstances changed over time, such that while they may have been justified in denying the reasonable accommodation in 2006, the accommodation would no longer have posed an undue financial burden in 2010."  Br. at 20 n.3 (citing *J.A. 62-66*).  However, appellants offered no evidence to support that speculative argument.

Lester Morton Court's financial statements, which are part of the summary judgment record, indisputably show that the housing complex was operating at a deficit in both 2006 and 2010, with a loss in 2006 of $303,199.41 and a loss in

---

[8] In fact, appellants do not even claim that Lester Morton Court, when viewed in its entirety, is not accessible to individuals with handicaps.  They have alleged only that their townhouse has accessibility issues.

2010 of $121,407.60.  *J.A. 56, 62-66*.  In his affidavit, Arnold Pilpil, Alpha's President, attested that, in light of Lester Morton Court's substantial operating deficits, an expenditure of $10,000 to $14,000 to make structural modifications to Mrs. Hill's townhouse constituted an undue financial burden.  *J.A. 56*.  Appellants produced no countervailing evidence.  Accordingly, even if changed financial circumstances might, in some hypothetical case, render a subsequent denial of accommodations a discrete act, there is no evidence in this record that could form a basis for the application of such a theory to this case.  It follows that the 2010 request and denial is not independently actionable and does not "re-start" the statute of limitations.

## III.   THE DISTRICT COURT WAS CORRECT IN RULING THAT THE CONTINUING VIOLATION DOCTRINE CANNOT REVIVE APPELLANTS' UNTIMELY CLAIMS

The denials of Mrs. Hill's repeated request for structural modification to appellants' townhouse do not amount to a "continuing violation" of the Rehabilitation Act, which would toll the statute of limitations.

The continuing violation doctrine is a narrow exception to the usual limitations rule.  The central purpose of the doctrine is to protect plaintiffs who could not have known that they should have sued earlier.  *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989) (the rationale behind the continuing violation theory is that the plaintiff "had no reason to believe he was a victim of

discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment"); *Martin v. Frank*, 788 F. Supp. 821, 825 (D. Del. 1992) ("Crucial to the rationale behind the continuing violation theory is whether the plaintiff knows he or she has been discriminated against.").  In this case, appellants knew, no later than 2006, that their requested accommodation had been denied.  There was no different action or activity thereafter that made it apparent to appellants that they had been denied this accommodation.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), the Supreme Court substantially limited the continuing violation doctrine, holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." This Court recently observed that, "to establish a continuing violation[,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice.'" *A Soc'y Without A Name*, 655 F.3d at 348 (alteration in original) (citation and quotations omitted).  Thus, a continuing violation exists only if the plaintiff can show that the illegal act "d[id] not occur at a single moment but in a *series of separate acts* and [that] the same alleged violation was committed at the time of each act." *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1167 (4th Cir. 1991) (emphasis added) (citation and quotations omitted).

The distinction between the present case, in which there was a single, discrete act that merely continued to affect appellants, and cases involving continuing violations is perhaps best summarized in *National Advertising Co.*, where this Court said, "[a] continuing violation is occasioned by continual unlawful acts, not *continual ill effects* from an original violation." *Id.* at 1166 (emphasis added). Where each act relates to the exact same subject matter – *e.g.*, repeatedly requesting the *same* structural modifications to appellants' townhouse – an individual cannot "keep his claim . . . forever alive" by periodically renewing the request. *See West v. ITT Cont'l Baking Co.*, 683 F.2d 845, 846 (4th Cir. 1982).

## A.     Appellees Did Not Engage in a Pattern or Practice of Discrimination

Any argument that there was "ongoing uncertainty" as to whether appellees would accommodate Mrs. Hill and that appellees did not "definitively" deny Mrs. Hill's request "until possibly 2010" (*see* Br. at 24-26) is not only unsupported by the evidence, but even if there were evidence to support it, would be insufficient to convert appellees' repeated denials of the same request into a fixed and continuing practice of discrimination.

In *Cherosky v. Henderson*, 330 F.3d 1243, 1244 (9th Cir. 2003), a case cited by appellants, the Court of Appeals for the Ninth Circuit considered "the impact of *Morgan* on employment decisions that occurred outside of the limitations period, but were made pursuant to an allegedly discriminatory policy that remained in

effect during the limitations period."  The Ninth Circuit rejected the plaintiff employees' assertion that their employer's separate denials of requests to use respirators constituted a pattern or practice of discrimination, and held that the employees' claims based on discrete acts that occurred prior to the limitations period were time-barred.  *Id.* at 1246, 48.  In reaching that holding, the Ninth Circuit made clear that "pattern-or-practice claims cannot be based on 'sporadic discriminatory acts' but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace." *Id.* at 1247 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).  Clearly there is no such evidence in this case.

As explain above, it is not disputed that appellees denied Mrs. Hill's request for structural modifications to her townhouse at the July 2006 meeting.  That denial constituted a discrete act of alleged discrimination, as Mrs. Hill knew at that time that appellees had denied her request, and no further adverse action was necessary for her to allege a Rehabilitation Act claim against appellees.  *Supra* §§ I.C., II.A.  This Court has held that "[s]uch discrete acts of discrimination 'are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.'" *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (quoting *Morgan*, 536 U.S. at 113).  *See also Morgan*, 536 U.S. at 113.  Accordingly, appellants' failure to accommodate claim based on the 2006 denial is not part of a

"continuing violation" that would extend the period of limitations, because that denial was a single, discrete act of alleged discrimination.

Similarly, although appellants make much of the community manager's suggestion in 2004 and 2005 that Lester Morton Court would accommodate Mrs. Hill (Br. at 24-26), it is beyond any reasonable dispute that appellants knew no later than the July 2006 meeting that appellees had refused to provide the requested structural modifications, and Mrs. Hill had indicated that she had no interest in the two-bedroom wheelchair-accessible apartments created during the 2005 renovation. *Supra* § I.C. The District Court aptly recognized that such "notification constituted the denial which gave rise to Hill's claim." *J.A. 146*. The fact that the community manager provided different responses to Mrs. Hill's requests in 2004 and 2005 does not render appellees' subsequent refusal to make the accommodations a "fixed and continuing practice" within the meaning of the continuing violation exception to the statute of limitations.

### B. Appellees' Denial of Mrs. Hill's 2010 Request Was a Continuing Ill Effect of the 2006 Denial

As discussed above, there is no genuine dispute that appellees unequivocally told Mrs. Hill at the July 2006 meeting that Lester Morton Court would not make the requested structural modifications. *Supra* § I.C. Thus, there can be no doubt that appellees' 2006 denial was a discrete, definitive act of alleged discrimination.

Furthermore, the undisputed facts demonstrate that Mrs. Hill's renewed request in 2010 for structural modifications to her townhouse – which is the only act alleged to have occurred after February 21, 2009 – was merely an attempt to obtain reconsideration of the prior denial. *Supra* § II.A. Appellants, therefore, fail to cite any discrete acts of alleged discrimination that fall within the limitations period.

Under well-established law, "every refusal to reconsider [the decision to deny accommodations] does not revive the limitations period for the original . . . decision." *Glendening*, 174 F.3d at 189. *See also Ricks*, 449 U.S. at 258 (holding that there was no continuing violation because the plaintiff's loss of teaching position was merely "one of the effects" of alleged discriminatory denial of tenure). In *Zdziech*, for example, the Third Circuit rejected the plaintiff's argument that his employer's continued refusal to reinstate him and accommodate his disability amounted to a "continuing act of ongoing discrimination." 114 Fed. App. at 472. The court reasoned that "[a]llowing [the plaintiff] to establish a continuing violation by repeatedly asking for reinstatement . . . is contrary to the rationale of the statute of limitations" and "would effectively eviscerate statutes of limitations in cases like this one." *Id.* (citations and quotations omitted).

Similarly, in *Hall v. The Scotts Co.*, No. 2:05-CV-732, 2005 WL 3499933, at*1 (S.D. Ohio Dec. 21, 2005), *affirmed*, 211 Fed. Appx. 361 (6th Cir. 2006), the plaintiff left work for an extended time because of a breathing condition. He

requested that the defendant accommodate his disability by providing him with a respirator/hardhat combination. *Id.* The defendant expressly denied the request, insisting that the plaintiff could not work while wearing the device. *Id.* Over a year later, the plaintiff offered to purchase the device himself. *Id.* The defendant again refused to accommodate him. *Id.* The first denial fell outside of the 300-day limitations period, while the second was within the period. *Id.* at *1-2. The district court rejected the plaintiff's theory that the defendant's two separate denials constituted "an ongoing 'interactive process' or dialogue" regarding his request for accommodation. *Id.* at *5. The court concluded:

> [T]here has been one decision . . . that is potentially discriminatory, and that is refusing to allow [the plaintiff] to wear the respirator mechanism at work. *The effects* of that specific decision continued [into the limitations period], but there is not an ongoing practice of discrimination that can preserve the claim. [S]imply asking a second time does not renew or revive his claim when there is ultimately but one act by [the defendant].

*Id.*

The well-reasoned opinions discussed above demonstrate why appellants' Rehabilitation Act claim cannot survive summary judgment. The denial of Mrs. Hill's requested accommodation was a single, completed action when taken, unlike the "series of separate acts" that constitute a "pattern or practice" of discrimination. Appellees' denial of Mrs. Hill's renewed request in 2010 was, at most, a continuing effect of appellees' decision in 2006 that they had no legal obligation to

accommodate appellants.    For these reasons, this Court should hold that the

continuing violation doctrine is inapplicable in this matter.

## CONCLUSION

This Court should affirm the judgment below.

Respectfully submitted:

 /s/ *M. Natalie McSherry*
M. Natalie McSherry
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
(410) 752-6030
(410) 539-1269 (facsimile)
Email:  nmcsherry@kg-law.com

*Counsel for Appellees*

## STATEMENT RESPECTING ORAL ARGUMENT

This appeal does not warrant oral argument under Fed. R. App. P. 34(a)(2). Where, as here, the dispositive issues have been authoritatively decided and the facts and legal arguments are adequately presented in the briefs and record, the decisional process would not be aided by oral argument. Furthermore, oral argument will only add to the attorney's fees and costs incurred by appellees as a result of appellants' untimely claims.

/s/ *M. Natalie McSherry*
M. Natalie McSherry

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with: (1) the 14,000 word type-volume limitation of Fed. R. App. P. 32(a)(7)(B), in that it contains 6,720 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and (2) the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportional typeface using Microsoft Word in 14-point Times New Roman.

 /s/ *M. Natalie McSherry*
M. Natalie McSherry

## CERTIFICATE OF SERVICE

I hereby certify that, on August 12, 2013, I filed the foregoing brief with the Court's CM/ECF system, which will cause copies to be served electronically on Luciene M. Parsley, Esquire, Christopher J. Wright, Esquire, Timothy J. Simeone, Esquire, and Danielle J. Piñeres, Esquire, Counsel for Appellants.

/s/ *M. Natalie McSherry*
M. Natalie McSherry

# ADDENDUM

# TABLE OF CONTENTS

29 U.S.C. § 794(a)........................................................................A-1

24 C.F.R. § 8.24(a)-(b)................................................................A-1

**29 U.S.C. § 794(a) – Nondiscrimination under Federal grants and programs**

(a)    Promulgation of rules and regulations

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

**24 C.F.R. § 8.24(a) – Existing housing programs**

(a)    General.  A recipient shall operate each existing housing program or activity receiving Federal financial assistance so that the program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with handicaps.  This paragraph does not --

    (1)    Necessarily require a recipient to make each of its existing facilities accessible to and usable by individuals with handicaps;

    (2)    Require a recipient to take any action that it can demonstrate would result in a fundamental alteration in the nature of its program or activity or in undue financial and administrative burdens.  If an action would result in such an alteration or such burdens, the recipient shall take any action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with handicaps receive the benefits and services of the program or activity.

(b)    Methods.  A recipient may comply with the requirements of this section through such means as reassignment of services to accessible buildings, assignment of aides to beneficiaries, provision of housing or related services at alternate accessible sites, alteration of existing facilities and construction

of new facilities, or any other methods that result in making its programs or activities readily accessible to and usable by individuals with handicaps.  A recipient is   not required to make structural changes in existing housing facilities where other methods are effective in achieving compliance with this section or to provide supportive services that are not part of the program. In choosing among available methods for meeting the requirements of this section, the recipient shall give priority to those methods that offer programs and activities to qualified individuals with handicaps in the most integrated setting appropriate.